IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGIA ELUMBARING,<br><br>Plaintiff,<br><br>vs.<br><br>PROGRESSIVE NORTHERN INSURANCE COMPANY,<br><br>Defendant. | CIV. 24-4078<br><br>**COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff states and alleges as follows:

## PARTIES

1. Plaintiff Georgia Elumbaring resides in Sioux Falls, Minnehaha County, South Dakota.

2. Upon information and belief, Defendant Progressive Northern Insurance Company ("Progressive") is a corporation domiciled in the state of Wisconsin.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, and it is between citizens of different states.

4. Venue in the United States District Court for the District of South Dakota is proper pursuant to 28 U.S.C. § 1391(b)(2)–(3) because a substantial part of the events or omissions giving rise to Plaintiffs' claims and causes of action occurred in this judicial district,

1

and because Defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of this action.

## FACTS

5. Defendant provided auto coverage to Plaintiff pursuant to an insurance policy ("the Policy"). The Policy was fully paid, effective and in force during the relevant dates in this matter.

6. Plaintiffs were insured under the Policy, which provided uninsured motorist coverage ("UM") up to a limit of $250,000 per person and $500,000 per accident.

7. On November 5, 2023, while the Policy was in force, Plaintiff was severely injured when the motorcycle she was a passenger on was involved in a crash.

8. The driver of the motorcycle, Vladyslav Markevych, was speeding while operating his motorcycle and crashed into a car crossing 41st street in Sioux Falls, South Dakota.

9. Vladyslav Markevych did not have insurance at the time of the crash.

10. Plaintiff was thrown from the back of the motorcycle upon impact, and suffered severe injuries as a result.

11. The crash and Plaintiff's resulting injuries were the fault Mr. Markevych.

12. To date, Plaintiff has incurred a significant amount of medical bills for injuries sustained in the crash, and she has undergone extensive medical treatment for her crash-related injuries.

13. Plaintiff's counsel contacted Progressive in early December to open a claim and provided the crash report to Progressive on December 5, 2023.

14. Progressive sent a letter to Plaintiff's counsel dated December 5, 2023, denying coverage under the Medical Payments Coverage section of Plaintiff's Policy.

15. By email dated December 6, 2023, Plaintiff's counsel informed Progressive Claims Adjuster Jacqueline Darrow that it was anticipated this would be an uninsured motorist claim due to Markevych's lack of insurance.

16. Progressive sent a letter to Plaintiff's counsel dated December 12, 2023, in which Progressive indicated it was "currently investigating" Plaintiff's claim but stated that "there may be no coverage because the unlisted motorcycle does not meet the definition of auto or covered auto."

17. In that same letter, Progressive indicated that its investigation was "ongoing" and that Progressive "reserve[d] the right to revise our position" in the future.

18. Plaintiff's counsel informed Progressive Claims adjuster Calvin Reece by email on January 31, 2024, that Plaintiff had brought suit against Michael Baete the driver of the vehicle which Markevych had struck, and that the driver's liability policy limit was $100,000 per person, $300,000 per accident.

19. After conducting discovery, Plaintiff's counsel determined that Baete was not liable for the crash and sent a letter to Progressive dated March 12, 2024, conveying this determination and requesting Progressive confirm its agreement with the position and to tender the $250,000 policy limit of uninsured motorist coverage to Plaintiff.

20. In that letter, Plaintiff's counsel also requested Progressive confirm that uninsured motorist coverage applied, notwithstanding the erroneous reasoning it had provided on December 13 regarding the questionable status of coverage.

21.     While Plaintiff requested a response by March 15, 2024, no response was received by that date.

22.     On March 19, Platintiff's counsel emailed a letter to Progressive adjuster Reece requesting again that Progressive confirm its agreement that Baete was not liable for the crash and to tender the policy limit.

23.     Reece responded on March 20 by emailing two letters to Plaintiff's counsel, one dated March 14, and one dated March 20.

24.     Both letters contained the same information. Progressive rescinded the reservation of rights letter of December 13, 2023, but would not tender the policy limit because Progressive claimed it needed documentation supporting the claim, a copy of the dismissal of the case against Baete, and informed Plaintiff's counsel that "we are awaiting a coverage determination from Auto Owners who is the purported insurance carrier for Vladyslav Markevych."

25.     Plaintiff's counsel responded by emailed letter dated March 20. Among other things, Plaintiff's counsel requested confirmation that Progressive agreed Baete was not liable, confirmation as to when Progressive confirmed its reservation of rights letter was incorrect, and inquired as to when Progressive had initiated its investigation as to whether Auto Owners insured Markevych and what the status of that investigation was. Plaintiff's counsel also provided the medical records, bills, and photographs for Plaintiff which Progressive had not compiled during the several months since they had been informed of the crash and Plaintiff's claim for UM benefits.

26. Plaintiff's counsel requested a response to the demand for UM benefits by March 29, 2024.

27. Progressive responded by letter dated March 27, 2024, in which it again stated it would not tender the policy limit as its investigation as to whether Markevych was insured was incomplete and that it required a copy of the dismissal of the suit against Baete.

28. In the same letter, Progressive finally specified it agreed Baete was not liable and his dismissal would not prejudice Plaintiff's claim for UM benefits.

29. Progressive also informed Plaintiff's counsel that it had obtained information on December 4, 2023, that Markevych may be insured by Auto Owners, and had reported a claim to Auto Owners on December 13, 2023. Progressive did not provide additional details of the status of its investigation with Auto Owners nor did Progressive indicate when it had determined its reservation of rights letter from December 13 was in error.

30. Plaintiff's counsel responded on March 28 stating that with Progressive's confirmation of agreement that Baete was not liable, a dismissal could be sought and would be subsequently provided.

31. In this letter, Plaintiff's counsel requested further information regarding the investigation with Auto Owners, as a substantial amount of time had passed and Progressive was still refusing to tender UM benefits on the basis of the incomplete investigation. Progressive was also asked to provide its evaluation of the various elements of damages to which Plaintiff is entitled to recover under South Dakota law.

32. By letter dated March 29, 2024, Progressive disputed the notion that it had not followed up with Auto Owners regarding Markevych's coverage, but provided no details to

substantiate this assertion, and refused to provide a breakdown of Progressive's evaluation of Plaintiff's injuries.

33. Progressive mailed the letter, rather than utilizing email or facsimile transmission, and it was not received by Plaintiff's counsel until April 8.

34. Plaintiff's counsel responded on April 8, requesting Progressive fax or email all letters going forward to avoid any additional delays, and again requested Progressive explain the status of its investigation with Auto Owners and provide its evaluation of Plaintiff's injuries. Plaintiff would forgo those requests for information if the policy limit was tendered on April 19, 2024.

35. Plaintiff's counsel contacted Auto Owners directly on April 9, 2024, and was able to confirm that day that Markevych was not insured by that company.

36. Plaintiff's counsel sent adjuster Reece a letter dated April 9 informing him that Auto Owners had confirmed Markevych was not its insured.

37. On April 18, 2024, Progressive adjuster Reece left Plaintiff's counsel a voicemail indicating Progressive was offering to settle Plaintiff's claim for $142,800 and requested counsel call him back to discuss the evaluation.

38. Progressive subsequently sent a letter dated April 18, 2024, confirming the offer of $142,800 and refusing to provide "pre-litigation" details of its investigation with Auto Owners or to provide an explanation of how it evaluated Plaintiff's claims.

39. Plaintiff's counsel responded to adjuster Reece by letter dated April 18, 2024, and requested that whatever rationale adjuster Reece wanted to provide by phone was transmitted in writing. Plaintiff's counsel also requested Progressive tender the roughly

$78,000 worth of medical bills Plaintiff had incurred to date unconditionally while the claim was resolved, and if not, to provide an explanation as to what bills Progressive disputed.

40. Plaintiff's counsel again requested Progressive provide its evaluation of Plaintiff's damages, information regarding Progressive's investigation with Auto Owners, and confirmation that Progressive's maximum authority to settle was $142,800.

41. By letter dated April 19, 2024, Progressive refused to provide details of its investigation with Auto Owners, refused to tender any amount of UM benefits for medical bills until a settlement was reached, and provided only a cursory explanation that its evaluation "was based on . . . all facts and pertinent circumstances concerning the accident, the related injuries, and reasonable and necessary care provided by qualified treaters."

42. Progressive has not paid Plaintiff anything with regard to her uninsured motorist coverage claim.

43. Progressive will not pay for the outstanding medical bills of roughly $78,000 unless and until Plaintiff agrees to Progressive's evaluation of her claim.

44. Progressive knows, or recklessly disregards, that its valuation of Plaintiff's uninsured motorist claim greatly exceeds its offer of $142,800 because it knows that $78,000 of that consisted of Plaintiff's medical bills.

45. Progressive has engaged in a pattern and practice of denying and delaying benefits owed to Plaintiff under the Policy.

46. Progressive had a duty to perform a reasonable investigation of Plaintiff's claim for uninsured motorist benefits.

47. If Progressive would have performed a reasonable investigation of Plaintiff's claim, it would have expeditiously confirmed Markevych's status with Auto Owners rather than allowing that open question to justify a refusal to tender uninsured motorist benefits.

48. If Progressive would have performed a reasonable investigation of Plaintiff's claims and placed Plaintiff's interests equal to Progressive's own, Progressive would have promptly rescinded the reservation of rights letter rather than waiting for Plaintiff's counsel to demand they do so months after issuing the letter.

49. If Progressive would have performed a reasonable investigation of Plaintiff's claims and placed Plaintiff's interests equal to Progressive's own, Progressive would have known that Plaintiff's uninsured motorist claim was worth more than its offer to settle of $142,800 because it knew the figure consisted of roughly $78,000 for outstanding medical bills.

50. Progressive is responsible for the investigation and evaluation of Plaintiff's claim by its agents and employees.

51. Progressive knew or recklessly disregarded that its valuation was biased in favor of Progressive.

52. Progressive's claim handling process, as described in this Complaint, is designed to deny paying its insureds, including Plaintiff, the full amounts owed under the Policy.

53. Progressive's claims handling process, as described in this Complaint, is designed to delay paying its insureds, including Plaintiff, the full amounts owed under the Policy.

54. As a result of Progressive's claims handling process, as described in this Complaint, Plaintiff has been damaged as follows:

   a. Plaintiff has been deprived of the benefits of the contract;

   b. Plaintiff has experienced increased expenses, aggravation, fear, annoyance, frustration, distress, and inconvenience due to the wrongful denial and delay of payments for her claim.

55. Based on the allegations above, Progressive's conduct rises to a level warranting punitive damages pursuant to SDCL § 21-3-2.

## COUNT I
### *Breach of Contract*

56. Plaintiff realleges the preceding paragraphs of this Complaint as if fully set forth here.

57. The Declaration Page of the Policy includes UM coverage of $250,000 per person and $500,000 per accident, and Plaintiff paid a premium for that coverage.

58. Plaintiff sustained injuries as a result of the negligence of an uninsured motorist on November 5, 2023.

59. Defendant is contractually obligated to fairly and timely pay UM benefits as a result of the crash caused by Markevych.

60. Defendant has failed to carry out its contractual duties under the Policy, resulting in damages to Plaintiff.

## COUNT II
### *Bad Faith*

61. Plaintiff realleges the preceding paragraphs of this Complaint as if fully set forth here.

62. Defendant committed insurance bad faith in at least the following ways:

a. Defendant failed to adopt and implement reasonable standards to promptly complete claim investigations and settlement of claims arising under its policies;

b. Defendant failed to make a good faith attempt to effectuate prompt, fair, and equitable settlement of claims submitted in which liability coverage and causation of claims have become reasonably clear;

c. Defendant refused to pay Plaintiff's claims without conducting a reasonable claim investigation;

d. Defendant failed to give Plaintiff's rights and interests as least as much consideration Defendant gave its own financial gains; and

e. Defendant failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of Plaintiff's claims.

63. As a direct and proximate result of these acts, errors, and omissions, Plaintiff suffered significant damages for which Defendant is liable.

## COUNT III
### *Vexatious Refusal to Pay Claim*

64. Plaintiff realleges the preceding paragraphs of this Complaint as if fully set forth here.

65. Progressive unreasonably and vexatiously refused to pay Plaintiff the amounts owing under the Policy with regard to her uninsured motorist claim, requiring the Court to award reasonable attorneys' fees as authorized under SDCL § 58-12-3.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for relief against Defendant as follows:

(1) That judgement enter in Plaintiff's favor;
(2) For Plaintiff's compensatory, general, and special damages in an amount the jury deems just and proper under the circumstances;
(3) For punitive damages in an amount the jury deems just and proper under the circumstances;
(4) For Plaintiff's costs and disbursements;
(5) For Plaintiff's attorneys' fees under SDCL § 58-12-3;
(6) For prejudgment and post-judgment interest; and
(7) For such other and further relief as the Court determines to be just and proper.

Dated this 25th day of April, 2024.

HEIDEPRIEM, PURTELL,
SIEGEL & HINRICHS, LLP

BY  /s/ Matthew A. Tysdal
Scott N. Heidepriem (scott@hpslawfirm.com)
Matthew A. Tysdal (matthew@hpslawfirm.com)
Pete Heidepriem (pete@hpslawfirm.com)
101 W. 69th Street, Suite 105
Sioux Falls, SD 57108
(605) 679-4470

*Attorneys for Plaintiff*

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues and claims so triable.

/s/ Matthew A. Tysdal
Matthew A. Tysdal

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Georgia Elumbaring

### DEFENDANTS
Progressive Northern Insurance Company

(b) County of Residence of First Listed Plaintiff: **Minnehaha**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew Tysdal; 101 W. 69th St., Suite 105
Sioux Falls, SD 57103; (605) 679-4470

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | PERSONAL PROPERTY | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [x] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | Habeas Corpus: | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | Other: | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Insurance Bad Faith

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: Apr 25, 2024
SIGNATURE OF ATTORNEY OF RECORD: /s/

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
 (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
 (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.